JASON J. BACH
Nevada Bar No. 7984
**THE BACH LAW FIRM, LLC**
7881 West Charleston, Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TAMMY WOLFE,<br><br>    *Plaintiff,*<br><br>    v.<br><br>CLARK COUNTY SCHOOL DISTRICT; and DOES Individuals I through X; *inclusive,*<br><br>    *Defendants.* | Civil Action No. 2:22-cv-1709<br><br>**COMPLAINT**<br>**(Jury Demanded)** |

COMES NOW, Plaintiff TAMMY WOLFE ("Plaintiff" or "Ms. Wolfe"), by and through her undersigned counsel, and hereby complains and alleges against the above-named Defendant, CLARK COUNTY SCHOOL DISTRICT ("Defendant" or "CCSD"), based upon knowledge, information and a reasonable belief derived therefrom, and represents as follows:

## PARTIES

1. Plaintiff, TAMMY WOLFE, currently is a resident of the State of Wisconsin.

2. Defendant, CLARK COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada located in Clark County, Nevada, created pursuant to Nev. Rev. Stat. § 386.010, with its principal place of business located at 5100 West Sahara Avenue, Las Vegas, Nevada 89146.

3. That the true names or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through XX are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.

4. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOES are responsible in some manner for the events and happenings referred to

in this action and proximately caused damages to Plaintiff as herein alleged, and that Plaintiff will ask leave of this Court to amend this Complaint, to insert the true names and capacities of said Defendants, and when the same have been ascertained to join such Defendants in this action.

5. At all times herein, Defendant Clark County School District, has been acting under color of law.

6. At all times relevant hereto, and in all their actions described herein, Defendant's actions took place in the State of Nevada, County of Clark.

**JURISDICTION AND VENUE**

7. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question), as the claims arise under the laws of the United States and are based upon retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

8. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district, and Defendant is located in this district.

9. Costs and attorney's fees are sought.

**GENERAL FACTUAL ALLEGATIONS**

10. At all relevant times, Plaintiff Tammy Wolfe was employed as a Special Education Teacher at Duane D. Keller Middle School ("Keller"), a constituent institution of CCSD.

11. In her position, Ms. Wolfe instructed students with learning disabilities, including disorders that interfere with a student's ability to listen, think, speak, write, spell, or calculate.

12. In furtherance of her job duties, Ms. Wolfe was responsible for developing, reviewing, and revising Individualized Educational Programs ("IEPs") for her students.

13. IEPs are written statements for each child with a disability that are developed, reviewed, and revised in accordance with federal regulations enacted to further the Individuals with Disabilities Education Act ("IDEA").

14. Among other things, these regulations specify that parents have the right to inspect and review all educational records relating to the identification, evaluation, and school placement of their child. *See* 34 C.F.R. § 300.501(a).

15. Parents also have the right to participate in meetings with respect to the identification, evaluation, and school placement of their child and must receive proper notice thereof. *See* 34 C.F.R. §§ 300.501(b)(1), (c)(1)-(3).

16. Finally, the notice provisions also require schools to arrange for an interpreter for parents whose native language is not English when it is necessary to ensure the parent understands the proceedings of an IEP team meeting. *See* 34 C.F.R. § 300.322(e).

17. In the fall 2020, as a result of the COVID-19 Pandemic, CCSD transitioned to complete online learning.

18. As a result, the IEPs in effect for Ms. Wolfe's students needed revision to address distance learning.

19. To facilitate the transition to online learning, CCSD provided guidelines to instructors addressing revisions to IEPs ("CCSD Guidelines").

20. The CCSD Guidelines required instructors to provide the least restrictive environment ("LRE") for special education students in the online environment.

21. For example, the CCSD Guidelines noted that, for self-contained students, "If they are able to handle the academics of their current grade level, we want to put them in with the general education students. Since everything is online, we have less to worry about in regard to behavior issues. We can reassess this later, but if you have students that you believe will be okay doing the work, then we need to talk to the admin and get their permission and get the [sic] put in with gen ed more."

22. On September 10, 2020, one of Ms. Wolfe's students, R.M.T., was given a decrease in the LRE despite Ms. Wolfe's opposition to the decrease. Specifically, R.M.T. was taken out of mainstream social studies and placed in a self-contained classroom. Ms. Wolfe believed that this change could only be made via an IEP meeting conducted in accordance with proper procedures.

23. In spite of her opposition to R.M.T.'s decrease in LRE and the process by which the determination was made, Ms. Wolfe was informed by Zachary Tawresey, Keller's Special Education Instructional Facilitatory, that he would inform R.M.T.'s mother, who spoke almost exclusively Spanish, of the decision, even though Mr. Tawresey could barely converse in Spanish.

24. Notably, Ms. Wolfe subsequently discovered that the IEP documentation for R.M.T. indicated that Ms. Wolfe had organized and/or attended an IEP meeting for R.M.T. when, in fact, this was not true.

25. In October 2020, Mr. Tawresey asked all special education teachers at Keller to sign time sheets to submit to CCSD for all IEPs assigned to case managers that needed revisions prior to October 1, 2020, in order for the special education teachers to receive pay for the revised IEPs. Prior to presenting the time sheets, Mr. Tawresey indicated he would be completing the IEPs and handling the IEP meetings and the teachers would need only to complete the time sheets. Ms. Wolfe refused to sign any such time sheet stating she had not revised or completed any IEPs or related meetings in September 2020 and therefore should not be paid for any.

26. In November 2020, Ms. Wolfe discovered that Mr. Tawresey had changed an assessment tool, a method by which students are evaluated in different areas that impact their day at school, for another of her students, M.A., but Mr. Tawresey did not inform Ms. Wolfe or the case manager for M.A. of the changes he had made. Mr. Tawresey organized the IEP documentation for M.A. and attended the IEP meeting, and neither Ms. Wolfe nor the case manager participated in either.

27. On April 7, 2021, Ms. Wolfe emailed Christina Brockett, Keller's Principal, and informed Ms. Brockett of her continuing concerns regarding IEP documentation.

28. Specifically, Ms. Wolfe noted to Ms. Brockett that IEP documents are considered legally binding documents and, in light of Ms. Wolfe's name being forged on the IEP documentation for R.M.T. in September 2020, she requested a meeting with Ms. Brockett, Mr. Tawresey, and anyone else who would need to be present for an investigation into her concerns.

29. At a subsequent meeting, Mr. Tawresey indicated that he had forged her name on the IEP documentation for R.M.T. so that Ms. Wolfe could get paid for having attended the IEP meeting. Ms. Wolfe, however, refused to sign the inaccurate time sheet reflecting payment for attending the meeting because she did not actually do so.

30. Mr. Tawresey also indicated that he was revising all of the IEPs pursuant to the Revisions to IEPs Without a Meeting guidelines, which note that revisions without meetings are only

permissible with the parent's agreement, prior written notice, and a follow up with an intent to implement with a final IEP attached.

31. Upon information and belief, Mr. Tawresey was not following the proper procedures associated with the guidelines when revising IEPs.

32. The problems with the IEP documentation continued, and, in fall 2021, Ms. Wolfe again informed Mr. Tawresey that she was discovering that IEP documents had been illegally and improperly changed.

33. Because Keller personnel and Mr. Tawresey still did nothing to address Ms. Wolfe's ongoing concerns, on October 12, 2021, Ms. Wolfe emailed officials with CCSD's regional staff regarding several special education students who Ms. Wolfe believed were not being adequately served.

34. On October 15, 2021, Keller Assistant Principal, Rachelle Duggins-Tetlow, and Mr. Tawresey, held a meeting with Ms. Wolfe.  During the meeting, Ms. Duggins-Tetlow alleged that Ms. Wolfe was "not communicating with [her] direct supervisor or Mr. Tawresey concerning student eligibility and IEPs."  Instead, she was speaking to "communicators" and other "support staff" that were "outside of Keller Middle School" before consulting with Keller personnel about her concerns.

35. Ms. Duggins-Tetlow reprimanded Ms. Wolfe for her conduct and directed her to speak only to Ms. Duggins-Tetlow or Mr. Tawresey concerning IEPs, placements, or the eligibility of Keller students.

36. On February 10, 2022, as a result of the ongoing stress and difficulty arising from CCSD personnel in the performance of her job, Ms. Wolfe had to seek urgent medical care for a suspected bleeding ulcer.

37. On February 25, 2022, Ms. Wolfe again was referred to CCSD regional staff, allegedly because of concerns Keller officials had with Ms. Wolfe's classroom management.

38. In March 2022, Ms. Wolfe met with Keller administrators, CCSD regional personnel, and Mr. Tawresey.  Again, CCSD administrators demanded that Ms. Wolfe follow the chain of command when raising her still-ongoing concerns and reprimanded her for her complaints.

39. In April 2022, Ms. Wolfe discovered a document in the student management system containing falsified information regarding herself and Mr. Tawresey. Specifically, it appeared that Mr. Tawresey had falsified a Manifestation Determination document for a student, J.G.

40. Manifestation is a determination that a student's behavior or disciplinary problems are related to their disability and to the school's failure to implement the student's IEP. In this case, Ms. Wolfe discovered that the Manifestation Determination for J.G. falsely indicated he had a decline in tardiness and truancies when, in fact, J.G. had a total of 20 hours and 30 minutes of tardy and truancy time.

41. As a result of CCSD's persistent harassment of Ms. Wolfe in the performance of her job, including unwarranted criticisms of her job performance, and CCSD's failure to remedy and rectify ongoing illegal conduct regarding IEP documentation, Ms. Wolfe resigned from her position on May 18, 2022, at the conclusion of the 2021-2022 academic year.

42. Ms. Wolfe exhausted her administrative remedies by timely filing Charge of Discrimination No. 487-2022-01717 with the U.S. Equal Employment Opportunity Commission ("EEOC"), on or around June 24, 2022.

43. The EEOC issued Ms. Wolfe's Determination and Notice of Rights Letter on July 12, 2022, but it was not received by Ms. Wolfe until over six weeks later. As such, the filing of this Complaint within ninety (90) days of her receipt thereof is timely.

**FIRST CAUSE OF ACTION**
**RETALITATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT of 1990 (42 U.S.C. § 12101, *et seq.*)**
*Against Defendant Clark County School District*

44. Plaintiff hereby incorporates by reference as set out fully herein all previous paragraphs of this Complaint.

45. The ADA provides that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

46. The term "person" includes political subdivisions, such as CCSD. 42 U.S.C. § 2000e.

47. Ms. Wolfe engaged in a statutorily protected activity by advocating on behalf of Keller's disabled students and their parents to require that CCSD follow the federal regulations regarding the development, review, and revision to the students' IEPs.

48. Ms. Wolfe further engaged in a statutorily protected activity by reporting irregularities and illegalities in IEP documentation to CCSD's regional personnel.

49. As a direct result of Ms. Wolfe's engagement in the protected activity, Ms. Wolfe suffered adverse employment action, including, but not limited to, receiving reprimands in October 2021, and March 2022, for her complaints to CCSD regional personnel regarding IEP documentation and receiving unfounded complaints and scrutiny from CCSD administrators regarding her classroom management after making said complaints.

50. As a result of CCSD's unlawful conduct, Ms. Wolfe has suffered damages and will continue to suffer monetary damages, including, but not limited to, wage loss, and emotional distress damages.

51. Ms. Wolfe is also entitled to an award of costs and reasonable attorneys' fees for having to initiate this suit as a result of CCSD's unlawful conduct.

52. Because CCSD's actions were willful, malicious, or in reckless disregard of Ms. Wolfe's rights, Ms. Wolfe also seeks an award for punitive damages.

### SECOND CAUSE OF ACTION
### RETALITATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT of 1973 (29 U.S.C. § 701, *et seq.*)
*Against Defendant Clark County School District*

53. Plaintiff hereby incorporates by reference as set out fully herein all previous paragraphs of this Complaint.

54. Section 504 provides that "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794.

55. Upon information and belief, CCSD receives financial assistance from the United States as a result of its participation in programs enacted pursuant to the IDEA and regulated by the U.S. Department of Education.

56. Ms. Wolfe engaged in a statutorily protected activity by advocating on behalf of Keller's disabled students and their parents to require that CCSD follow the federal regulations regarding the development, review, and revision to the students' IEPs.

57. Ms. Wolfe further engaged in a statutorily protected activity by reporting irregularities and illegalities in IEP documentation to CCSD's regional personnel.

58. As a direct result of Ms. Wolfe's engagement in the protected activity, Ms. Wolfe suffered adverse employment action, including, but not limited to, receiving reprimands in October 2021, and March 2022, for her complaints to regional personnel regarding IEP documentation and receiving unfounded complaints and scrutiny from CCSD administrators regarding her classroom management after making said complaints.

59. As a result of CCSD's unlawful conduct, Ms. Wolfe has suffered damages and will continue to suffer monetary damages, including, but not limited to, wage loss, and emotional distress damages.

60. Ms. Wolfe is also entitled to an award of costs and reasonable attorneys' fees for having to initiate this suit as a result of CCSD's unlawful conduct.

61. Because CCSD's actions were willful, malicious, or in reckless disregard of Ms. Wolfe's rights, Ms. Wolfe also seeks an award for punitive damages.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues in this matter.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgment in her favor, and against Defendant CCSD, for the following relief:  (a) for compensatory damages in an amount in excess of $75,000.00 to be determined at trial; (b) for punitive damages to be determined at trial; (c)

for interest; (d) together with the costs and disbursements of this action and such other attorneys' fees, pursuant to 42 U.S.C. § 1988; and (f) further relief as justice requires.

DATED this 10th day of October, 2022.

                                      **THE BACH LAW FIRM, LLC**

                                      By    */s/ Jason J. Bach*
                                           Jason J. Bach
                                           Nevada Bar No. 7984
                                           7881 West Charleston, Suite 165
                                           Las Vegas, Nevada 89117
                                           Telephone: (702) 925-8787
                                           Facsimile: (702) 925-8788
                                           Email: jbach@bachlawfirm.com
                                           *Attorney for Plaintiff*